**98**

John L. BARRETT, Petitioner,

v.

STATE OF CALIFORNIA, Warden Louis Nelson, California State Prison, San Quentin, California, Respondents.

Civ. No. 11–446–C–2.

United States District Court,
S. D. Iowa, C. D.

June 5, 1972.

Robert Bartels, Iowa City, Iowa, for petitioner.

Evelle J. Younger, Atty. Gen. of the State of California by Robert R. Granucci, Asst. Atty. Gen., Richard C. Turner, Atty. Gen. of the State of Iowa by Michael J. Laughlin, Asst. Atty. Gen., for respondents.

MEMORANDUM AND ORDER

HANSON, Chief Judge.

The Court has before it John L. Barrett's Petition for Writ of Habeas Corpus. The Court has jurisdiction over the subject matter pursuant to 28 U.S.C., Section 2254. The Court has jurisdiction over the person of Louis Nelson, Warden of the California State prison at San Quentin, by reason of his Return to the Court's Order to Show Cause. Barrett challenges the validity of a detainer lodged by California prison officials with Iowa prison officials. He alleges that such a detainer denies him due process of law under the Fourteenth Amendment to the Constitution because, as a matter of law, the sentences underlying the California detainer have been satisfied.

The facts are these: Petitioner, John L. Barrett, pleaded guilty in the District Court of the State of Iowa in and for Pottawattamie County on or about June 14, 1962 to the crime of breaking and entering in violation of Iowa Code, Section 708.8 (1962). Following his plea of guilty he was sentenced to be confined in the Men's Reformatory at Anamosa, Iowa, for a period not to exceed 10 years. On or about December 21, 1962, Barrett escaped from the Men's Reformatory. Subsequently, Barrett was arrested in the State of California for the crime of robbery, and on March 12, 1963, he pleaded guilty to that charge in the Superior Court for the State of California in and for the County of Los Angeles. As a result of said guilty plea, Barrett was sentenced to imprisonment in the California State Prison for a period of 5 years to life. On or about April 1, 1963, the Warden of the Men's Reformatory at Anamosa lodged a detainer with the Warden of the California Institution for Men at Chino for Barrett's return to Iowa after serving his California sen-

tence. In 1965, Barrett petitioned California prison officials and courts to be returned to Iowa so that he could serve his California sentence concurrently with the remaining period of his Iowa sentence. On June 7, 1965, the Superior Court for the State of California in and for the County of Marin issued a Writ of Habeas Corpus for the limited purpose of enabling Barrett to be returned to Iowa so that his California and Iowa sentences could be served concurrently. Iowa prison officials subsequently informed California officials that they were declining to take Barrett back to Iowa until he received parole from California. On March 30, 1967, Barrett attempted to escape from the California Central Correctional Training Facility at Soledad. Barrett pleaded guilty to the crime of escape, a felony, and on May 23, 1967, the Superior Court for the State of California in and for the County of Monterey sentenced him to incarceration for a period of 6 months to 5 years, the sentence to run concurrently with the 1963 sentence. On or about May 27, 1968, Barrett petitioned California prison officials to be returned to Iowa and to have his California sentence run concurrently with his Iowa sentence. He also petitioned Iowa officials for his return. On September 16, 1968, California officials authorized Barrett's return to Iowa to enable him to serve his California sentences concurrently with his Iowa time remaining. On October 8, 1968, Iowa officials advised California officials that Iowa would accept Barrett's return for concurrent service of Iowa and California sentences. Just prior to the proposed date of Barrett's return to Iowa, he was found in possession of two stabbing instruments while in the California prison; California accordingly withdrew its offer to Iowa so that it could institute proceedings against Barrett. On February 3, 1969, after Barrett pleaded guilty to possession of a knife by a prisoner, a felony, the Superior Court of the State of California in and for the County of Marin sentenced Barrett to imprisonment for 3

years to life, such sentence to run concurrently with Barrett's other sentences. On February 4, 1969, Barrett again petitioned California prison officials to be returned to Iowa to enable him to serve all of his sentences concurrently. On February 11, 1969, California officials again offered to release Barrett to Iowa custody on a concurrent sentence basis. California and Iowa officials subsequently agreed that Barrett be returned to Iowa on the condition that the California sentences run concurrently with the Iowa sentence. On March 21, 1969, California lodged its detainer with the Warden of the Men's Reformatory at Anamosa. On March 25, 1969, California officials released Barrett to Iowa officials with the express understanding that the California sentences were to run concurrently with the Iowa sentence and that California still have custody of Barrett pursuant to the detainer lodged with Iowa officials. On March 26, 1969, Iowa officials notified California officials of their receipt of the detainer and informed California officials that they would receive notice of the pending release of Barrett by Iowa 30 days prior to his actual release. On April 29, 1969, California officials were notified that Barrett was being transferred to the Iowa State Men's Penitentiary at Fort Madison and that the detainer was being transferred to that location also. California at no time paroled Barrett. Neither California's Governor nor any other State official to the present commuted Barrett's sentences. California has always acknowledged its intention to apply the time Barrett serves in Iowa in reduction of his sentences in California. This was the intention of and agreement between Barrett, California, and Iowa.

■ First, the Court must examine jurisdictional problems. 28 U.S.C., Section 2241 states that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." Ordinarily this Court could not obtain personal jurisdiction over the State of California and its prison officials. Therefore, any relief this Court

could give a petitioner in a similar situation as the instant one would ordinarily be in the form of an Order to Iowa prison officials. For this reason a line of cases having their origin in the Fourth Circuit, Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969) (en banc), and approved by the Eighth Circuit, Brown v. Arkansas, 426 F.2d 677 (8th Cir. 1970), indicate that the federal courts in California would be the proper courts to hear this action, as Barrett is complaining of California convictions. The Eighth Circuit has ruled, however, that this Court can hear this action, Brown v. Arkansas, *supra;* Booker v. Arkansas, 380 F.2d 240, 243 (8th Cir. 1967) by reason that both California and Iowa have present custody of Barrett—Iowa having actual custody, California having constructive custody by reason of its detainer. Because California and its officials have placed themselves personally under the jurisdiction of this Court, the Court will assume jurisdiction of the action and will not transfer it to a federal district court in California.

A further subject matter jurisdiction problem arises under 28 U.S.C., Section 2254(b), which provides that an application for writ of habeas corpus shall not be granted in behalf of a person under State custody "unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." The Court is not familiar with the law of California and the procedures which might be available to Barrett in California state courts. The State of California contends in its return that there are indeed state remedies in California and Barrett has not exhausted them; it presents no California law to the Court, however. Although this Court concludes that it would be justified in dismissing Barrett's petition for failure to exhaust State remedies, it will, nevertheless, turn to the merits of Barrett's petition.

Barrett contends that California's surrender of him to Iowa custody while he was still serving his California sentences is equivalent to a pardon or commutation and that, therefore, California has waived its right to regain actual custody of him after completion of his sentence in Iowa. There is some authority to the effect that it is a violation of due process of law to compel a prisoner to involuntarily serve a split sentence, that is, after he is convicted and commenced to serve his sentence, to remove him without his consent to another jurisdiction for imprisonment and then to receive him back into custody for service of the remainder of the sentence without giving him credit for time served outside the jurisdiction. Thompson v. Bannan, 298 F.2d 611 (6th Cir. 1962); In re Jennings, 118 F. 479 (C.C.E.D.Mo.) (Thayer, Circuit Judge); People ex rel. O'Connor v. Bensinger, 270 N.E.2d 1 (Ill., 1971); People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E. 2d 517 (1943). *See* Anno., 147 A.L.R. 941 (1943). Other cases hold to the contrary. Dorrough v. Texas, 440 F.2d 1063 (5th Cir. 1971); Montos v. Smith, 406 F.2d 1243 (5th Cir. 1969); Bilton v. Beto, 403 F.2d 664 (5th Cir. 1968). *See* Anno., 147 A.L.R. 941 (1943). In Morelock v. State of Iowa, Civil No. 72–72–2 (May 3, 1972) (unreported), this Court adopted the rule announced by the Court of Appeals for the Fifth Circuit. The Fifth Circuit holds that due process is not denied by split sentencing, unless the surrendering state has shown a total lack of interest in recovering the prisoner for such a period of time that it would be unreasonable and unfair for courts to permit the state to renew its claim to custody. Bilton v. Beto, *supra;* Shields v. Beto, 370 F.2d 1003 (5th Cir. 1967).

██ California lodged its detainer for Barrett with Iowa even before Iowa obtained custody of Barrett. California always exhibited great interest in getting Barrett back. That Barrett petitioned California to release him to Iowa to serve all terms on a concurrent basis is an extremely compelling reason to the Court

for ruling that the present California detainer does not violate due process of law. The Court is aware of no case holding that where the prisoner has voluntarily sought his removal to another jurisdiction for service of another sentence, the surrendering state has lost its power to receive the prisoner back. The cases cited by Barrett in his brief all deal with the situation where the prisoner was removed to another jurisdiction involuntarily, and are distinguishable upon that ground, in addition to the fact that many of those cases did not deal with the issue of due process of law. Ex Parte Guy, 41 Okl.Cr. 1, 269 P. 782 (1928) (Governor's action tantamount to a pardon); Jones v. Morrow, 154 Kan. 589, 121 P.2d 219 (1942) (executive order in the nature of a commutation); Jones v. Rayborn, 346 S.W.2d 743 (Ky., 1961) (action of state was arbitrary and capricious when prisoner involuntarily removed from state custody).

Accordingly, it is ordered that the petition of John L. Barrett for a Writ of Habeas Corpus be, and the same is hereby, denied, and that this cause of action be, and the same is hereby dismissed.