989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Peter H. RANSOM, Petitioner-Appellant,
v.
Raymond ROBERTS; Attorney General of the State of Kansas,
Respondents-Appellees.
 No. 92-3044.
 United States Court of Appeals, Tenth Circuit.
 March 22, 1993.
 
 Before LOGAN, MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Ransom, a state inmate and pro se litigant, appeals the denial of habeas relief. We grant permission to proceed in forma pauperis and affirm.
 
 
 3
 Mr. Ransom was convicted in the Kansas courts of rape, aggravated battery and theft and was sentenced to fifteen years to life. Mr. Ransom has exhausted his state remedies and is currently confined serving his sentences.
 
 
 4
 Mr. Ransom commenced the present proceedings by filing a forty-three page pro se petition for habeas relief. In his petition, Mr. Ransom asserted: (1) his constitutional right to a speedy trial was violated; (2) his due process and equal protection rights were violated and he was twice placed in jeopardy for the same crime; (3) he was denied effective assistance of counsel; and (4) the trial court committed constitutional error by admitting a statement given by Mr. Ransom in violation of his right against self incrimination.
 
 
 5
 The district court thoroughly reviewed each of Mr. Ransom's claims in an eight-page Memorandum and Order and denied relief. We attach hereto a copy of this Memorandum and Order.
 
 
 6
 Mr. Ransom appeals the district court's order raising the same issues and in addition asserts the district court committed reversible error: (1) by failing to appoint counsel; (2) by failing to grant an evidentiary hearing; (3) by failing to grant a new trial due to the state court's violation of its sequestration order; and (4) by failing to order a new trial based upon newly discovered evidence. Mr. Ransom further alleges that the Kansas Supreme Court violated his rights by granting a rehearing on the initial dismissal of the charges. Mr. Ransom's brief to this court concludes by asserting the state prosecutor fabricated the incriminating evidence.
 
 
 7
 We first address Mr. Ransom's allegations that the State of Kansas violated its own laws in securing this conviction. Federal courts cannot and do not act as state appellate courts. A federal court has no power to correct a state court's error in applying state law. A federal court only has the jurisdiction to correct a state's violation of the United States Constitution. Consequently, the federal court system lacks the authority to rectify nonconstitutional defects such as the alleged violation of the sequestration order, newly discovered evidence, and the improper granting of a rehearing. Therefore, the only contentions a federal court can address are those involving the petitioner's rights under the United States Constitution.
 
 
 8
 Mr. Ransom raised several constitutional errors, such as the Sixth Amendment right to a speedy trial, ineffective assistance of counsel, double jeopardy, and the right against self-incrimination. The district court carefully explained in its Memorandum and Order why habeas relief could not be granted concerning these allegations. Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Mr. Ransom fails to cite any authorities to this court that would tend to show the district court either applied the wrong law or misapplied the correct law. We conclude the district court's judgment was correct for substantially the same reasons set forth in the attached Memorandum and Order. Thus, we are left to resolve only whether petitioner should have been granted an evidentiary hearing and been provided counsel to address his ineffective assistance of counsel claim.
 
 
 9
 A habeas petitioner is not entitled to appointed counsel as an absolute right. Plaskett v. Page, 439 F.2d 770, 771 (10th Cir.1971); 28 U.S.C. § 1915(d); 18 U.S.C. § 3006A(g). Generally, appointment of counsel is not required until the need for an evidentiary hearing has been established.
 
 
 10
 [A] federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the applicant a full and fair fact hearing.
 
 
 11
 Townsend v. Sain, 372 U.S. 293, 313 (1963); see 28 U.S.C. § 2254. Defendant has alleged no facts that would cause a factual dispute necessitating an evidentiary hearing; thus, none of Townsend's factors are met. The district court had the discretion to conduct an evidentiary hearing, and we cannot say the district court abused its discretion by denying Mr. Ransom an evidentiary hearing.
 
 
 12
 The judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 
 13
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF KANSAS
 
 
 14
 PETER H. RANSOM, Petitioner,
 
 
 15
 v.
 
 
 16
 RAY ROBERTS, et al., Respondents.
 
 
 17
 CASE NO. 90-3245-S.
 
 MEMORANDUM AND ORDER
 
 18
 SAFFELS, District Judge.
 
 
 19
 This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, who is an inmate at the Topeka Correctional Facility, Topeka, Kansas, was convicted by a jury of aggravated kidnapping, rape, aggravated battery, and theft in February, 1985. On direct appeal, the Kansas Supreme Court reversed petitioner's conviction for aggravated kidnapping, but affirmed all other aspects of the conviction and sentence. In this action, petitioner challenges his conviction and claims: (1) that his constitutional right to a speedy trial was violated; (2) that his due process and equal protection rights were violated and that he was twice placed in jeopardy for the same crime; (3) that he was denied his constitutionally guaranteed right to effective assistance of counsel; and (4) that the court erred in admitting a statement by petitioner in violation of his right against self-incrimination.
 
 
 20
 Having reviewed the record in this matter, the court makes the following findings and order.
 
 Factual Background
 
 21
 The court initially notes that petitioner's journey through the judicial process requires some explanation before the merits of his substantive claims can be addressed.
 
 
 22
 Petitioner was initially charged July 17, 1981. On August 13, 1981, petitioner was arraigned and trial was set for November 5, 1981. Petitioner was granted a continuance and trial was reset for December 3, 1981. The State was then granted a continuance and trial was again reset for January 18, 1982. By agreement of counsel, the matter was continued until March 11, 1982. The continuances were granted because of the State's difficulty in obtaining the attendance of certain essential witnesses. When the State again sought a continuance on March 4, 1982, for the same reason, the trial court denied the motion. Although nearly 60 days remained before the State would run afoul of the speedy trial statute, K.S.A. 22-3402, the court expressed concern about the protracted proceedings to date. The trial court granted the State's oral motion to dismiss without prejudice. In granting the motion, the court warned the State that there were potential speedy trial problems if the case were refiled.
 
 
 23
 On March 9, 1982, the State filed identical charges against petitioner. Petitioner sought and received a continuance for a preliminary hearing until March 31, 1982. At that time, petitioner waived the hearing and pled not guilty. Trial was set for May 3, 1982. On April 30, 1982, the State again sought a continuance because of an unavailable witness. Trial was rescheduled for June 9, 1982. Two days prior to trial, the court entertained several motions including petitioner's motion to dismiss for failure to comply with the speedy trial statute. The trial court noted that 211 days, well beyond the 180 day statutory limit, had elapsed since petitioner's first arraignment and specifically found that the State had failed to show that the March 5, 1982, dismissal was based on necessity.
 
 
 24
 The State appealed the dismissal to the Kansas Supreme Court which, by a 4-3 decision on March 31, 1983, affirmed the trial court's dismissal.[1] Apparently, the State filed a timely motion for rehearing which was granted. On rehearing, the original three dissenters were joined by the newest member of the court, Justice Lockett, to form a new majority and the trial court's order of dismissal was reversed. The original majority, minus Judge Coffman, became the dissenters. In the opinion, filed, as modified, on December 16, 1983, the court found that the State had made a showing of necessity at the time of the first dismissal. Therefore, the days accumulated prior to that dismissal did not count for purposes of the speedy trial act.
 
 
 25
 The mandate was issued on January 25, 1984 and petitioner's trial was scheduled to begin on April 11, 1984. On March 22, 1984, petitioner sought a continuance pending the determination of his writ of certiorari in the United States Supreme Court. The writ was denied and trial finally commenced on February 12, 1985 nearly four years after petitioner's initial arraignment.
 
 
 26
 Petitioner was convicted of aggravated kidnapping, rape, aggravated battery and theft. On appeal to the Kansas Supreme Court, the conviction for aggravated kidnapping was reversed for insufficiency of the evidence. The other convictions were affirmed.
 
 
 27
 Petitioner filed this action seeking habeas relief on July 19, 1990.
 
 Discussion
 
 28
 Petitioner claims his constitutional right to a speedy trial under the Sixth and Fourteenth Amendments has been violated. Petitioner also suggests that this court should address the violation of his right to a speedy trial under the state statute. This court, however, does not have authority to issue a writ of habeas corpus for violation of state law by state authorities. Cain v. Petrovsky, 798 F.2d 1194, 1195 (8th Cir.1986).
 
 
 29
 Petitioner's claim that his constitutional right to a speedy trial was violated must be analyzed under the standard set forth in Barker v. Wingo, 407 U.S. 514 (1972). In Barker, the court articulated a balancing test to be applied on a case by case basis. The conduct of the prosecution and the defendant are to be weighed using four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and, (4) the prejudice to the defendant. Id. at 530.
 
 
 30
 Applying the test to the facts of this case, the length of the delay, although almost four years, is not inordinately long. Barker, for example, was not brought to trial for over five years. When coupled with the reason for the delay, the length of time is even less oppressive than it first appears. Although several of the delays were charged to the State, several others were either charged to, or agreed to, by the petitioner. In addition, one of the longest delays was when petitioner's motion for certiorari was before the United States Supreme Court.
 
 
 31
 Closely related to the first two factors, is the defendant's assertion of his right to a speedy trial. The record reveals that petitioner, at times, asserted his objections to delay, but at other time, did not object, or, in fact, sought delays himself.
 
 
 32
 Finally, the court must consider the prejudice to the petitioner from the delay. In Barker, the Court stated that prejudice to the defendant must be analyzed in terms of the interests of the defendant. The Court identified three such interests: (1) the prevention of oppressive pretrial incarceration; (2) the minimizing of anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Id. at 532. In this case, petitioner was not incarcerated and there is no evidence that the defense was in any way impaired. While it is assumed that anxiety and concern will accompany every criminal accusation, the record reveals no evidence that the delay in petitioner's trial significantly exacerbated petitioner's concern and anxiety.
 
 
 33
 Petitioner was not denied his constitutional right to a speedy trial.
 
 
 34
 Petitioner next claims he was denied equal protection under the law, his right to due process and that he was twice placed in jeopardy for the same crime. Although petitioner's argument is difficult to follow it appears the thrust of his complaint is that the Kansas Supreme Court erred when it decided to rehear the State's appeal from the trial court's dismissal of the charges against him.
 
 
 35
 A motion for rehearing or modification is allowed under Kansas Supreme Court Rule 7.06 (1991 Kan.Ct.R.Annot. 36). The granting of the motion is discretionary. Petitioner has presented no evidence that the court abused its discretion. Although Judge Coffman, who sat for the first appeal, had retired and Justice Lockett had been appointed and sat for the rehearing, petitioner has presented no evidence of harm caused by this change. Petitioner misstates his claim that he has twice been placed in jeopardy for the same crime. The record is clear that petitioner was called to defend the charges against him only once and, thus, was never placed in jeopardy prior to the trial.
 
 
 36
 Petitioner next contends he was denied the effective assistance of counsel. To establish his claims of ineffective assistance of counsel, petitioner must meet the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). The two-part Strickland test requires (1) a showing that counsel committed errors so serious that the defendant did not receive the counsel guaranteed by the Sixth Amendment, and (2) a showing that counsel's performance was so deficient that the defendant did not receive a fair trial. Under Strickland, the defendant bears the burden to establish both incompetence and prejudice, and there is a presumption that the attorney's conduct comes within "the wide range of reasonable professional assistance." Id. at 689.
 
 
 37
 Petitioner claims counsel failed to investigate and call witnesses who would have been helpful to petitioner's cause. Whether to call particular witnesses is a matter of trial tactics and is discretionary with trial counsel. United States v. Glick, 710 F.2d 639, 644 (10th Cir.1983) cert. denied 465 U.S. 1005 (1984).
 
 
 38
 Petitioner also claims counsel should have called an expert witness to testify about photographs of footprints at the scene of the crime. Petitioner offers no reason how this would have been helpful to him. Again, trial tactics such at the introduction of evidence and the calling of witnesses is the exclusive province of the attorney after consultation with his client. Winter v. State, 210 Kan. 597, 502 P.2d 733 (1972).
 
 
 39
 The record reveals counsel vigorously cross-examined the State's witnesses, presented defense witnesses to impeach the statements of those witnesses, and relentlessly conducted his theory of the defense, mistaken identity.
 
 
 40
 Petitioner has failed to carry his burden for meeting the Strickland test. His claim of ineffective assistance of counsel is, therefore, without merit.
 
 
 41
 Petitioner's final contention is that the trial court improperly admitted a statement he made to a police officer after his arrest in violation of his Fifth Amendment right against self-incrimination. At the time of his arrest, and after he had been Mirandized, petitioner voluntarily responded to the statement of a police officer. The officer testified that no interrogation was taking place, that he did not ask petitioner a question nor did he expect a response. Utterances which are not elicited in response to custodial interrogation are voluntary. Pennsylvania v. Muniz, 496 U.S. ----, 110 S.Ct. 2638, 2652 (1990). Any utterances made by petitioner, which are voluntary, are admissible.
 
 
 42
 Petitioner's last claim is that witnesses violated the trial court's order of sequestration by viewing the trial in the media room. However, petitioner has presented no evidence to support who saw or heard what testimony or, more importantly, how he was prejudiced by these events. Petitioner has failed to present a meritorious claim.
 
 
 43
 IT IS THEREFORE BY THE COURT ORDERED the petition for writ of habeas corpus is denied. The clerk of the court is directed to transmit copies of this order to the petitioner and respondent.
 
 
 44
 DATED: This 17 day of January, 1992 at Topeka, Kan.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 At the time the appeal was heard, District Court Judge Floyd Coffman was sitting with the court as a replacement for the deceased Justice Alex Fromme. Judge Coffman retired from the bench prior to the rehearing